E. W. JENKINS, Appellant, v. THE CHICAGO & ALTON RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, November 7, 1887.

1. RAILROADS—DUTY AS TO FENCES—EXCEPTIONS, AND WHAT THEY INCLUDE.—In this state it is the duty of every railroad company to erect and maintain fences along the line of its railroad everywhere outside of towns and cities, and except at public crossings and de-

pot grounds. The exception as to public crossings includes not only highways *de jure*, but also highways *de facto*.

2. ——— PRIVATE ROADS—DUTY OF RAILROADS CONCERNING.—Private roads are so termed by the statute to distinguish them from public roads, which are maintained at the public expense. A mere private road, which the public has neither the right to use, nor is actually using as a highway, the railroad company is in duty bound to fence across. Unless the lane in this case was a highway *de jure* or *de facto*, it was the duty of the defendant to have fenced across it. 1 Rorer on Railroads, 495.

APPEAL from Saline Circuit Court, HON. RICHARD FIELD, Judge.

*Reversed and remanded.*

The case is stated in the opinion.

J. P. STROTHER, for the appellant.

I. This was not a public road, nor a public road-crossing. *Banks v. Railroad*, 69 Mo. 222; *Hodges v. Railroad*, 71 Mo. 37; Wharton's Law Dictionary, title, "Highway."

II. In the country it is only at public crossings that railroads are exempt from the duty of fencing. *Morris v. Railroad*, 79 Mo. 367. In this case, Hough, C. J., referring to *Walton v. Railroad* (67 Mo. 58), says: "In that case it is true the reasoning of this court in *Robinson v. Railroad* (57 Mo. 494), was criticized, but the judgment was approved, as it was a suit for single damages under the fifth section of the damage act. The statute under which these cases were decided has been amended, however, and whatever difference of opinion may exist as to the duty of the railroad to fence under the old law, we are all of opinion that fences are now required to be erected everywhere outside of towns and cities, except at public crossings and depot grounds." *Perriquez v. Railroad*, 78 Mo. 91; *Tickell v. Railroad*, 90 Mo. 298.

III. The fact that the proprietor of land adjoining

the right of way of a railroad company has failed to fence up to his line does not absolve the company from compliance with its statutory duty to fence its road where it passes through uninclosed lands. *Hamilton v. Railroad*, 87 Mo. 85. So had said Philips, C., in *Rutlege v. Railroad* (78 Mo. 286). *Rozzelle v. Railroad*, 79 Mo. 349.

IV. It follows that the court erred in amending instruction numbered one, asked by plaintiff, and in giving instructions numbered one, three and four, especially number three, asked by defendant. The latter was unquestionably erroneous, and, under the evidence, was equivalent to a peremptory instruction. It was and is out of the power of even a county court to establish a private road unless where a public road neither "passes through nor touches it." Acts 1868, p. 161, sect. 1; now sect. 1973, Rev. Stat. *A fortiori*, an individual could not establish a private road or "outlet," as called in instruction three, in a case like this, where the public road both "touched and passed through" the land of Mrs. Mead.

G. B. MACFARLANE and DAVIS & WINGFIELD, for the respondent.

I. The point where the cattle were killed was a public road-crossing within the meaning of section 809, and it was the duty of respondent to treat it as such, and respondent had no right to close it by gates or otherwise, either against the general public or against Mrs. Mead. *Walton v. Railroad*, 67 Mo. 56; *Railroad v. Farrell*, 76 Mo. 183; *Luckie v. Railroad*, 76 Mo. 639; *Brown v. Railroad*, 20 Mo. App. 427, and cases there cited; Laws of 1883, p. 169, sect. 53; *Zimmerman v. Snowden et al.*, 88 Mo. 218. Although Mead says, in his evidence, that his mother, the owner of the land adjoining the road in question, always claimed, and had the right to close said road, it does not appear that she ever attempted to exercise that right, and we hold that, under the foregoing decisions, she did not have that right at

the time respondent's road was constructed, if she ever had it.

II.   The third instruction given for respondent stated the law correctly, and there was abundant evidence to support it. The case of *Walton v. Railroad* (67 Mo. 56), is exactly in point. The statement in that case shows that the road over which the controversy arose was merely a private one, and yet the court held that the railroad had no right to fence it. The third instruction, given at the instance of appellant, states the law much more favorably for appellant than respondent's third instruction does for respondent, and certainly cures any error that may exist in said third instruction.

III.   The third instruction given for appellant is based on the theory that, in order to constitute the road in question a public or private road, so as to exempt defendant from the duty of fencing it, it must have been established by the county court either as a public or private road, or left open and used by the public as a road continuously, or without being fenced or obstructed by the owners of the land, and without a denial of the right of the public exhibited, so as to notify the public of such denial by obstructing such way for a period of at least ten years. This is the law, and, under the evidence in the case, the verdict of the jury was correct.

IV.   The points made by appellant are not well taken, and his authorities do not sustain his position.

HALL, J.—This was an action for double damages on account of the killing of six of plaintiff's cattle.

The question in the case was as to the duty of the defendant to fence its railroad where it crossed a certain lane or road.   This lane was not on the plaintiff's land, and with it he had no connection or relation whatever. The court gave the following instruction, among others, for the defendant:

"3.   If the jury believe, from the evidence, that the road, or open space, by which the cattle went on to

defendant's railroad, had been kept open and used as a private outlet or way for the convenience of her farm by the owner of the land over which the same ran, and had been open and used for more than ten years before the cattle were killed, and was fenced on both sides for a space extending north and south of the railroad extending to a public road on the south, then the same was a private road, and defendant had no right, and it was not its duty, to fence the same, and the verdict must be for the defendant.''

And, in another instruction, the court told the jury to find for the defendant if they believe the cattle in suit were killed at the crossing of a public or private. road.

There was no pretense that the lane in evidence was a statutory private road, established in accordance with the provisions of the statute in relation to private roads. In this state it is the duty of every railroad company to erect and maintain fences along the sides of its railroad, "everywhere outside of towns and cities, except at public crossings and depot grounds." *Morris v. Railroad*, 79 Mo. 370 ; *Boyle v. Railroad*, 21 Mo. App. 424. The exception, as to public crossings, includes not only highways *de jure*, but also highways *de facto*. *Brown v. Railroad*, 20 Mo. App. 433 ; *Luckie v. Railroad*, 76 Mo. 642. The question is, does the exception include private roads ? In *Walton v. Railroad* (67 Mo. 57), the court does say : "A private road is a highway, a 'public highway,' within the meaning of the fifth section of the damage act." But the context clearly shows that all the court meant was, that a private road, established in accordance with the provisions of the statute concerning private roads, is a highway. The court expressly bases the statement, above quoted, on the provision of the statute, referred to, to the effect that a private road is free to be traveled by all persons as a public road. And the court, *in arguendo*, says : "The phrase [of the damage act] 'public highway,' is a

tautological expression. A highway is a passage, road, or street, which every citizen has a right to use, and is, therefore, necessarily public. The road in question was a highway, and could not be fenced by the defendant. 'Private roads' are so termed by the statute to distinguish them from public roads, which are maintained at the public expense." The section of the statute concerning private roads, referred to by the court, is as follows: "Such road, *when established*, shall be free to be traveled by all persons as a public road, and the county court shall have power at any time, when it considers it of sufficient public utility, to adopt said road as a county road, and have it kept in repair as other county roads." Rev. Stat., sect. 6982. This section applies only to private roads established under the statute. There is nothing in *Walton v. Railroad* (*supra*), intimating a contrary opinion. A mere private road, which the public neither has the right to use nor is actually using as a highway, the railroad company is in duty bound to fence across. As said in Rorer on Railroads: "Though a railroad corporation which, by the statute, is required to fence its road, under penalty of paying for injuries thereon inflicted upon live stock, is neither required nor authorized to fence public crossings or highways, or places of public resort, it is nevertheless its duty to fence across private ways where they cross over its road, the same as in other places, or else to place safe gateways thereat." (Vol. 1, p. 495). Unless the lane, in proof, was a highway *de jure* or *de facto*, it was the duty of the defendant to have fenced across it. The court should have instructed the jury to this effect.

Judgment reversed, and cause remanded. All concur.