DOW, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

**St. Louis Court of. Appeals, February 13, 1906.**

RAILROADS: Fencing Right of Way: Highways. A road used and traveled by the public for more than ten years is a public highway and a railroad company is not required to fence its right of way where it crosses such highway.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED.

*Cyrus Crane* and *O. L. Cravens* for appellant.

The demurrer should have been sustained, and there was no evidence to base plaintiff's first given instruction on, even if we apply to defendant the rule that there must have been a user by the public for the full period of ten years, which, as the authorities cited below show, is not necessary in order to establish a *de facto* public road, still we would be within this rule. The evidence shows a continuous and uninterrupted user for longer than twelve years of this road by the public. This made is a road *de jure.* McLemore v. McNeley, 56 Mo. App. 556; State v. Warner, 51 Mo. App. 174; Easley v. Railway, 113 Mo. 236, 20 S. W. 1073. Even though but a lane, yet it was opened and used by the public for travel and defendant maintained a crossing with cattle-guards and wing fences, and was under no statutory obligation to fence it up, in which case it is not liable. Luckie v. Railroad, 76 Mo. 639; Walton v. Railroad, 67 Mo. 56; Carter v. Railroad, 69 Mo. App. 295; Roberts v. Railroad, 43 Mo. App. 287; Jackson v. Railroad, 66 Mo. App. 506; Jenkins v. Railroad, 27 Mo. App. 578.

*Horace Ruark* for respondent.

The burden of showing the existence of a public highway, if any, was upon appellant. When the plaintiff proved that his animals were killed at an uninclosed place (and there was no dispute as to that fact) he made a prima facie case and the burden was upon the defendant to show some legal reason for not fencing at that point. Hamilton v. Railroad 87 Mo. 85; Cox v. Railroad, 128 Mo. 371, 31 S. W. 3; Wood v. Railroad, 43 Mo. App. 294.

GOODE, J.—This action was instituted to recover damages for the killing of two mares belonging to plaintiff. The petition was in two paragraphs, of which the first was founded on section 1105 of the Revised Statutes, and asked for double damages on an averment that the animals went on the railroad track at a point where the law required defendant to fence its right of way, but which it had failed to do. The second paragraph prayed for single damages and alleged the animals were killed in consequence of the negligent manner in which the engineer and trainmen handled the train. Plaintiff lived some five miles south of the point of the accident. His mares went on the railroad track from a road or inclosed lane, the width of which was probably from sixteen to twenty feet, though the fact cannot be ascertained certainly from the testimony. This lane ran immediately north of the farm of a man named Eppard. Defendant's railroad ran north and south on the west of or through Eppard's farm, and running north and south on the west of the farm was a public highway into which the lane opened. Eastwardly from the lane the country was rough and hilly, and after the lane opened into this broken country, it was no longer fenced but branched into several wooded roads or trails over the hills. When the railroad was built the lane was treated as a public highway and cattle-guards and wing fences were con-

structed across the railroad track on either side of it to prevent cattle straying from the lane along the right of way. Evidence was introduced having some tendency to prove the train could have been prevented from colliding with the animals by careful management; but there was evidence to the contrary, and the jury returned a verdict for defendant on that cause of action, thereby acquitting it of negligence. The court left it to the jury to determine whether or not the lane from which the animals entered the right of way had been opened and used merely for a private outlet or way of convenience, and not as a traveled public highway, with a direction to return a verdict for plaintiff if the lane was found not to be in public use. A request by defendant that the jury be directed to return a verdict in its favor was refused.

The sole question presented on the appeal is whether there was any evidence which supported an inference that the point where the animals entered the right of way, was elsewhere than at the crossing of a public road which the defendant company was not required or allowed to fence. The testimony for plaintiff showed that twelve or more years before the accident, the proprietors of the land on either side of the lane had fallen into a dispute about the boundary line between their farms, and after having the adjacent fields surveyed several times, had opened the present lane, fencing it off from their fields. Since that time the lane has been constantly open to public use and every one who desired to travel it did so. Travel on it appears to have been infrequent of late years, but has never ceased. Men on horseback, lumber wagons and other vehicles went through there occasionally; some every week. Plaintiff, who lived five miles away, testified that he had used the road and that it showed marks of travel. He said that though you could see such marks, the lane was washed and a wagon could hardly get through now. Presumably the best informed witness on the subject was Eppard, whose farm lies just south of the lane. His

testimony as to the use of the lane by the public was as follows:

"Q. This was a traveled lane through there? A. People traveled it. Q. With wagons and horses? A. Yes, sir, and stock goes through there. Q. Is there a road leading off at the east end of this lane? A. Yes, sir. Q. Going up the hill? A. Yes, sir. Q. Is that a regularly traveled road? A. Yes, sir. It goes out on the flats east of there. Q. And the lane is regularly traveled by the public? A. Yes, sir. It is traveled by the public. Q. Regularly? A. Yes, sir, whenever they want to. Q. Does anybody live over there on the flat? A. Yes, sir. Q. Is this road that is west of you, of the place where you rent, the regular Anderson and Neosho road? A. Yes, sir. Q. And this lane runs into that? A. Yes, sir."

It is to be borne in mind that all the evidence we are noticing on the question of the use of the lane by the public, was introduced by the plaintiff. In our judgment it establishes conclusively that it was a public and traveled road and had been for more than ten years; and hence the public had acquired a right in it by adverse use. [Easley v. Railway Co., 113 Mo. 236, 20 S. W. 1073.] Nor does the public character of the road turn on the quantity of travel, if the thoroughfare was still open and in use by all who had occasion to go over it. All the testimony on the point goes to show that years ago the lane was set apart and dedicated by the adjoining proprietors as a public passway from the country lying to the eastward, to the highway on the west of Eppard's farm, and had been in continuous public use ever since. It was not shown that the road ever had been worked by the county authorities; but this was an immaterial circumstance to disprove it was a public highway, if the people at large had acquired by prescription the right to travel over it and were exercising the right. [Roberts v. Railroad, 43 Mo. App. 287; Brown v. Railroad, 20 Mo. App. 427.] Railroad companies are not re-

quired to fence their lines where public roads, *de facto*, cross them. [Luckie v. Railroad, 76 Mo. 639.] There is not the least doubt that the lane was a public road which the railroad company was not bound to fence. And the plaintiff having established that fact by his own witnesses, a verdict for the defendant should have been directed when requested at the close of plaintiff's case. [Pope v. Boyle, 98 Mo. 527.] Nothing in the testimony introduced by the defendant assisted the plaintiff's cause by tending to prove the lane was not a public road; and the defendant having renewed its request for an order for a verdict in its favor, the request should have been granted. [Guenther v. Railroad, 95 Mo. 286, 8 S. W. 371.]

Judgment reversed. All concur.